**CHAMPLIN PETROLEUM COMPANY,**
Appellant,

v.

**BOARD OF COUNTY COMMISSIONERS OF
COUNTY OF OKLAHOMA, State of
Oklahoma, Appellee.**

No. 46528.

Supreme Court of Oklahoma.

Sept. 17, 1974.

C. Harold Thweatt, Tom L. Armstrong, Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, for appellant.

Curtis P. Harris, Dist. Atty., William L. Funk, Asst. Dist. Atty., Oklahoma City, for appellee.

LAVENDER, Justice.

Champlin Petroleum Company, herein referred to as plaintiff or Champlin, brought this action against the Board of County Commissioners of the County of Oklahoma, herein referred to as defendant or county, to recover $3,649.49 in damages for injury to its pipeline. The record before this court consists of an amended petition and an order of the court below sustaining a demurrer of the defendant and dismissing the action.

Facts found in the petition, and for purposes of this appeal must be considered as correct, establish:

Champlin held a pipeline right of way under which it owned and operated a pipeline used to move gasoline and other hydrocarbon liquids. The county operated a landfill in close proximity to Champlin's production pipeline. The presence of the pipeline was marked and known by the county. On March 2, 1972, an employee of the county while operating a bulldozer in conjunction with the landfill bulldozed too close to the pipeline and caused a rupture of it. A similar incident occurred approximately a year prior. The county's landfill was for use of the general public and appropriate fees were charged. Funds from the fees were paid into a special fund maintained by the County Clerk of Oklahoma County and allocated to the county commissioner in which the landfill was located.

The petition contained two causes of action. Each cause of action was based on the taking or damaging of private property under Const., Art. 2, § 23. One cause of action claimed damage through trespass and the other a taking through a nuisance.

The court below found the county was acting in a proprietary and not governmental capacity, but in either event there was no recourse against the county. We concur with the trial court's action in sustaining the demurrer and dismissing the action for the reasons stated in this opinion.

Both parties in their briefs treat the actions as based in tort. The plaintiff argues a county should respond in damages the same as a city for proprietary functions. The defendant argues a county cannot be sued in tort. Both parties agree the county was authorized to operate the landfill under 63 O.S.1971, § 2257.

The legislature in 1970 enacted the Oklahoma Solid Waste Management Act, 63 O.S.1971, § 2251 et seq. Section 2257 allowed the Board of County Commissioners in each county to authorize a solid waste management system "to handle adequately solid wastes generated or existing within the boundaries of such county." The commissioners were authorized to collect fees appropriate to discharge their responsibility for a solid waste management system or any portion of it. In definitions at § 2253 we find:

"(4) 'Solid waste' means all putrescible[1] and non putrescible refuse in solid or semi solid form including, but not limited to garbage, rubbish * * *;

(5) 'Disposal site' means any place at which solid waste is dumped, abandoned,

---

1. Webster's third new international dictionary defines the word "putrescible" as "capable of being putrefied."

**1144** ■■■■■■■■■■■■

or accepted or disposed of by \* \* \* landfill \* \* \*;

(6) 'Solid waste management system' means the entire process of storage, collection, transportations, processing, and disposal of solid wastes by \* \* \* county \* \* \*."

The purpose of the act found at § 2252 reads:

"It is the purpose of this act and it is hereby declared to be the policy of this state to regulate the collection and disposal of solid wastes in a manner that will (a) *protect the public health and welfare*; (b) prevent water pollution or air pollution; (c) *prevent the spread of disease* and the creation of nuisances; (d) conserve natural resources; and (e) enhance the beauty and equality of the environment." (Emphasis added)

City of Purcell v. Hubbard, Okl., 401 P. 2d 488 (1965) involved damage resulting from a fire which spread from the burning of collected refuse or garbage in an open ditch on land owned by the city. At page 489 this court said:

"The decided weight of authority is that collection and disposition of garbage by a municipality is a governmental function, \* \* \*. The precise issue was settled in this jurisdiction by our decision in Oklahoma City v. Baldwin, 133 Okl. 289, 272 P. 453, in which the syllabus states:

\* \* \* \* \* \*

"2. In the collection and disposition of garbage, a city acts for the public health and discharges a governmental function. In these acts it is an agent or arm of the commonwealth, and for that reason is absolved from liability for negligence of its employees."

We have difficulty distinguishing between the county's operation of the landfill in the case at bar and the Hubbard case, supra.

The operation of a landfill by the county under the control of the board of health[2] as provided in the Oklahoma Solid Waste Management Act must be for health purposes.

In Board of Com'rs v. Barker, 119 Okl. 206, 249 P. 296 (1926) this court said:

."It is well settled by decisions of this court that counties and townships within this state are merely quasi municipal corporations serving as agencies of the state, and are clearly distinguishable in their powers and liabilities from purely municipal corporations such as cities. The reason for the distinction is thus stated in Dillon on Municipal Corporations (5th Ed.) vol. 1, § 37:

'They are involuntary political or civil divisions of the state, created by general laws to aid in the administration of governments. \* \* \* They are purely auxiliaries of the state; and to the general statutes of the state they owe their creation, and the statutes confer upon them all the powers they possess, prescribe all the duties they owe, and impose all the liabilities to which they are subject.' "

"This state has long been committed to the rule, without a single exception, that the State is immune from suits without its waiver or consent." Henry v. Oklahoma Turnpike Authority, Okl., 478 P.2d 898 (1970). That statement is followed by some eighteen Oklahoma citations as authority. The opinion then continues:

"The above cases involve situations where the State was acting in a *governmental capacity*." (Emphasis added)

■■■ We hold the county's operation of the landfill complained of in this case to be a governmental function and not proprietary. Because of the nature of the function the county is not subject to an action in tort based on the operation of the

2. Oklahoma Solid Waste Management Act at 63 O.S.1971, § 2259 provides: "The Board of Health is directed and empowered to adopt and promulgate rules and regulation for the transportation of solid waste and disposal sites including, but not limited to, the disposal site location, construction, operation, and maintenance of the disposal site or disposal process as necessary to implement the purpose and intent of this act. \* \* \*."

landfill. Collection of fees as allowed by the Act to aid the county commissioners to discharge their responsibility for a solid waste management system or any portion thereof does not change the nature of the function itself.

Champlin contends the operation of the landfill was a nuisance based on the two similar incidents occurring approximately a year apart which resulted in its pipeline being broken each time; and this would be such a taking of private property as to allow damages under Article 2, Section 23 of the Constitution. We question the application of § 23. That section relates to the taking of private property for private use. The landfill was operated by the county. It was a governmental function and for a public use. If there was a taking of Champlin's private property, then it would be for public use under § 24 and not § 23. Section 24 has a similar provision to § 23 which provides:

"Private property shall not be taken or damaged for public use without just compensation."

■ A public nuisance is defined at 50 O.S.1971, § 2 as one which affects at the same time an entire community or neighborhood, or any considerable number of persons. No comparable facts are alleged by Champlin. The following section, § 3, provides every nuisance not included in the definition of the last section is private. We conclude any nuisance alleged by Champlin in its petition would be a private nuisance.

■ British-American Oil Producing Co. v. McClain, 191 Okl. 40, 126 P.2d 530 (1942) was an action by real property owners against a number of oil companies to recover damages for a "private nuisance" arising out of drilling operations on adjacent lands. This court held the constitutional provision, Art. 2, § 23, did not re-quire the "use" to be of a careless or negligent nature or unreasonable or unwarrantable to entitle the injured party to recover. This court did say, however:

"We therefore hold that an unreasonable interference with the owner's peaceful occupancy and enjoyment of his premises by the operation of a near-by business, though such operation may be lawful, constitutes a taking of or damage to the premises within the meaning of section 23, article 2, of the Constitution."

It is our opinion in the instant case there has not been shown an unreasonable interference with the use of the pipeline which would constitute a taking of private property so as to allow recovery for damages under that constitutional provision.

■ The landfill operated by the county was under the express authority of the Oklahoma Solid Waste Management Act. Its operation as alleged in the petition does not constitute a nuisance or a taking or damaging of private property so as to allow recovery under either § 24 or § 23 of Article 2 of the Constitution.

By this opinion we do not pass on such issues as whether a county may act in a proprietary capacity; whether a county, if acting in a proprietary capacity, would be subject to the same rule as a municipal corporation; and whether the damage clause found in sections 23 and 24, Article 2 of the Constitution, must be incidental to an appropriation and the consequential damages resulting from the exercise of the power of eminent domain.

Affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and IRWIN, BERRY and BARNES, JJ., concur.

HODGES, SIMMS and DOOLIN, JJ., dissent.