E.H. STEWART, Wanda L. Stewart, John Peoples, LaRue Peoples, James Howard and Sharon Howard, Appellants,

v.

Fenton ROOD, Director, Solid Waste Division of the Oklahoma State Department of Health; the Oklahoma Department of Health; Joan K. Leavitt, Commissioner, State Department of Health; Pottawatomie County Health Department; and the Board of County Commissioners of Pottawatomie County, Appellees.

No. 64932.

Supreme Court of Oklahoma.

July 17, 1990.

Paul F. Fernald, Trent W. Keller, Keller & Fernald, Oklahoma City, and John L. Clifton, Shawnee, for appellants.

Robert D. Kellogg, Oklahoma State Dept. of Health, Oklahoma City, for appellees.

LAVENDER, Justice:

We decide in this case: 1) whether prior to recent changes made by the 42nd Oklahoma Legislature, that body intended for the Oklahoma Department of Health (ODH) in making a decision to *grant* a permit to construct and operate a solid waste landfill pursuant to the Oklahoma Solid Waste Management Act (OSWMA), 63 O.S.1981, § 2251 et seq., as amended [1] to

1. The Oklahoma Solid Waste Management Act was considered by the 42nd Oklahoma Legislature and several amendments and additions were made in the Act. These changes are found in Senate Bill No. 153 and House Bill No. 1905 which were both signed into law by the Governor on May 18, 1990, to take effect on September 1, 1990. In view of the effective date of

be subject to the strictures of the Oklahoma Administrative Procedures Act (OAPA), 75 O.S.1981, §§ 301 et seq., as amended (now §§ 250–323) concerning individual proceedings and whether landowners adjacent to a proposed site were entitled to judicial review under the OAPA to challenge the granting of a permit; 2) whether landowners adjacent to a site so permitted, as a matter of either statutory and/or constitutional right were entitled to notice and an opportunity for a trial type hearing *prior to* the granting of a permit; 3) whether 63 Supp.1983, § 2258.2, a part of the OSWMA, violated any due process rights of such landowners under either OKLA. CONST. art. 2, § 7 or U.S. CONST. amend. XIV, § 1 because it only provided for publication notice upon filing an application for a sanitary landfill permit and a "formal public meeting", upon request of any person residing or doing business in Oklahoma, for the expression of written or oral views, *rather than a trial like proceeding;* and 4) whether the *mere granting of a permit* constitutes a taking of private property for public use of adjacent landowners without just compensation in violation of either OKLA. CONST. art. 2, § 24 or U.S. CONST. amend. V, as incorporated in amend. XIV. We answer all of these questions in the negative. We note, however, such landowners or others, were not necessarily foreclosed from bringing appropriate remedial actions in the courts of this State against ODH challenging the permit based on the ground(s) ODH did not follow either substantive statutory criteria or its own substantive rules in granting the permit or, from bringing in the future district court actions against the operator or owner of the site based on contentions operation of the landfill somehow injures or immediately threatens injury to a legally recognized interest inuring in them.[2]

these provisions our decision in this case is not *directly* impacted thereby. However, 63 O.S. Supp.1983, § 2258.2, note 3, *supra,* a major provision at issue here, was substantially modified by Senate Bill No. 153. In our view, the modifications lend support to our decision here that § 2258.2, prior to the modifications, *was not* intended by the Legislature to be conducted as an individual proceeding under the Oklahoma Administrative Procedures Act. The modifications will be discussed later in this opinion.

**2.** Appellants' trial court petition and its subsequent amendments were not strictly couched in terms of an appeal from an administrative order under 75 O.S.1981, § 318, the judicial review mechanism of the OAPA. However, their arguments both in the trial court and on appeal are that the granting of the landfill permit was required to comply with the dictates of the OAPA. In addition, in responding to a motion to dismiss filed in the trial court by ODH Appellants argued they were entitled to judicial review of the granting of the permit under § 318. Original Record, pp. 82–85. To the extent their trial court petition(s) *could be read* to also attack, outside the confines of judicial review under the OAPA, the correctness of certain substantive decisions by ODH normally required to be made by its own rules before a permit is granted (e.g. that BFI did not show it owned the proposed site of the landfill or have a valid lease on the site that extended eight years beyond projected closure date), their effort must fail because Appellants have not presented any transcript of the trial court hearing in this matter which might support their position in such regard. We have held absent a record showing otherwise this Court will presume a trial court did not err. *Hamid v. Sew Original,* 645 P.2d 496, 497 (Okla.1982). The only record we have before us on this appeal is the court clerk's file and we find nothing therein which would legally support Appellant's position in regard to these substantive matters.

We also note nowhere in this record is it shown or asserted by Appellants that any proceeding by them was instituted before ODH under 75 O.S.1981, § 307 [now 75 O.S.Supp. 1987, § 307] to obtain a declaratory ruling as to the applicability of any rule or order of the agency, which itself would be subject to judicial review under the OAPA. We, thus, have no occasion to determine here when use of § 307 may be an appropriate vehicle for adjacent landowners or others to involve themselves in the landfill permitting process. We recognized in *Associated Builders and Contractors of Oklahoma v. State of Oklahoma, ex rel., Oklahoma Department of Labor,* 628 P.2d 1156, 1161 (Okla. 1981), it may be appropriate in certain instances for a person to seek an individual proceeding before an agency and that the order entered therein would be subject to judicial review under § 318 of the OAPA.

We finally note that nothing in our decision forecloses these Appellants or others who can show substantial injury to their property by operation of the landfill from recovering damages in an action based on a private nuisance theory or other viable theory. *See British– American Oil Producing Co. v. McClain,* 191 Okl. 40, 126 P.2d 530, 532–534 (1942). There we held an unreasonable interference with an owner's peaceful occupancy and enjoyment of his

This case began with the filing of an application by Browning–Ferris, Inc. (BFI) with ODH for a sanitary landfill permit to be located at a site in Pottawatomie County. Pursuant to § 2258.2 notice of the application was published in newspaper(s) local to the proposed site of opportunity to oppose the granting of the permit by requesting a "formal public meeting." Such a meeting was held in Earlsboro, Oklahoma on or about April 9, 1984, and was attended by all or some of the Appellants here, apparently owners of land adjacent to the proposed site.[3] Written and oral views in opposition to the application, as allowed by § 2258.2, were apparently expressed during the meeting, but it *was not* conducted as a trial-type proceeding nor did ODH consider such to be required by the OSWMA, the OAPA or any other law, statutorily or constitutionally grounded. Six months later, on October 9, 1984, Appellants filed their petition in the district court of Pottawatomie County attempting to restrain issuance of the permit. On the same date ODH, apparently unaware of the pendency of the petition, granted the permit to BFI. The matter was heard by the district court on the issues raised by Appellants' second amended petition which sought to void the permit.

The basis of Appellants' attack is threefold. One, they allege the OSWMA is unconstitutional as a matter of procedural due process because it does not provide adequate notice and opportunity to be heard to those adversely affected by the granting of the permit. In such regard, they claim their property (real estate, residences or businesses) *either are or will be* adversely affected in numerous ways because of the close proximity of the proposed site. In part, *they appear to contend the permit itself* allows "BFI the right to depreciate, take, and make unusable [their] property by construction, operation and maintenance of a noxious, unsightly, disease prone and unsafe landfill next to [their] homes". In essence, they seem to be asserting a landfill as a matter of law is a nuisance.

They next assert the procedures of ODH in relation to them were infirm because they did not comply with the dictates of the OAPA in regard to the conducting of individual proceedings and the procedures utilized by ODH in granting the permit were so arbitrary and capricious that the permit is void. In this regard, they argue entitlement, as a matter of statutory or constitutional law, to the protections of the OAPA, with all its procedural safeguards, including an appeal under 75 O.S.1981, § 318 to a state district court to challenge the correctness of the ODH decision, under relevant criteria, to grant the permit. They also apparently assert the permit granting process was arbitrary and capricious because ODH, they claim, granted the permit even though the overwhelming majority of the interested populace opposed the proposed site for the landfill. Finally, they assert the OSWMA is unconstitutional because it allows the taking of their property for public use without just compensation.

premises by the operation of a near-by business, though such operation is lawful, constitutes a taking of or damage to said premises within the meaning of OKLA. CONST. art. 2, § 23.

**3.** 63 O.S.Supp.1983, § 2258.2 provides:

An applicant for a permit for a new disposal site, upon the filing of the application with [ODH], shall give notice by one publication in two newspapers local to the proposed disposal site of opportunity to oppose the granting of such permit by requesting a formal public meeting. If within thirty (30) calendar days of the publication of such notice [ODH] receives from any person residing or doing business in Oklahoma written notice of opposition and request for a formal public meeting, it shall hold the same and allow opportunity for presentation of written and oral views. Such meetings may be held in the offices of [ODH] or at a location convenient to the proposed disposal site if requested in the written request for such meeting.

The record does not conclusively show Appellants requested such a meeting or that they are owners of land adjacent to the proposed landfill site, although they alleged the latter in their second amended petition. As stated in note 2, *supra,* no transcription is contained in the appellate record of any proceeding (hearing or trial) held in the trial court. There is further no formal certified record of the proceedings before ODH and no transcription of the public meeting held before that agency. For the purposes of our decision we assume Appellants are owners of property adjacent to the proposed landfill site.

The district court bifurcated the matter into two stages. It initially held the OSWMA constitutionally firm in regard to both the procedural due process and taking clause arguments of Appellants. It next decided the procedures utilized by ODH, although possibly not the best that could be envisioned, were not so arbitrary and capricious such that the permit issued thereunder was rendered void.[4] In effect, it decided ODH in the granting of a landfill permit was not required to conform to the requirements for individual proceedings under the OAPA and adjacent landowners had no identifiable property interest subject to due process protection in the *permit granting process to a neighboring landowner to utilize his land for a landfill.*

The Court of Appeals affirmed the ruling of the trial court, *but in doing so it held the granting of such a permit was subject to the OAPA.* It appeared influenced in its ruling *affirming* the district court by the fact no administrative record was procured *by Appellants* for review and no trial court transcript of any hearing or trial was submitted on appeal. We granted certiorari to determine whether the *permitting process* was subject to the strictures of the OAPA for individual proceedings, including culmination in an appeal under § 318 of the OAPA, whether adjacent landowners have protectible due process rights in that process and whether the mere granting of such a permit constitutes a taking of private property for which compensation must be paid to adjacent landowners. All of these questions are matters of first impression.

## I. THE OAPA *ITSELF* DOES NOT MANDATE ISSUANCE OF ALL AGENCY PERMITS COMPLY WITH THE DICTATES ON INDIVIDUAL PROCEEDINGS NOR THAT ISSUANCE BE SUBJECT TO JUDICIAL REVIEW

In order to reach a decision in this case we must first determine whether the OAPA *itself* requires the granting of all agency permits to conform to the adjudicatory mechanisms set forth therein. The OAPA was promulgated by the Legislature in 1963. Although some variations were contained in it the Legislature drew most heavily upon the 1961 Revised Model State Administrative Procedure Act (RMSAPA) in enacting the OAPA.[5] Although we have had occasion many times to interpret the OAPA, we have never expressly decided the question of whether all permits issued by a State administrative agency are governed by the individual proceeding provisions of the OAPA and whether all such decisions are subject to judicial review thereunder or, stated another way, whether the OAPA *itself* mandates all agency procedures which culminate in the issuance of a permit be subject to what is now Article II of the OAPA concerning individual proceedings. The provisions relating to individual proceedings and judicial review from such proceedings are now known as Article II of the OAPA and are found at 75 O.S.

---

**4.** ODH initially takes the position Appellants' appeal should be dismissed based on the concept of waiver. Its view in such regard is premised on a combination of the *purported* fact Appellants have not briefed issues concerning the second stage of the trial court's bifurcated proceedings (the adequacy of ODH procedures in granting the permit) *and* the failure of Appellants to take an immediate appeal from the trial court's initial decision upholding the constitutionality of the OSWMA, such decision having been made about four and one-half months prior to the petition in error having been filed herein. ODH does not question that the appeal *was* filed within thirty days of the trial court decision as to the issues tried in the second stage of the bifurcated proceedings. We determine ODH's position is without merit. First off, we read Appellants' appellate submissions as briefing issues relating to the second stage of the trial court proceedings. Secondly, we do not view the trial court's initial decision on the constitutional issues to have been a final appealable order. Instead, we believe it was merely a decision on a portion of a cause of action which was interlocutory in nature. Such decisions are not normally subject to immediate appeal. *See Mann v. State Farm Mutual Automobile Insurance Company,* 669 P.2d 768, 771 (Okla.1983).

**5.** The 1961 Revised Model State Administrative Procedure Act can be found at 14 U.L.A. Civil Proc. 371. *See Conoco, Inc. v. State Department of Health,* 651 P.2d 125, 129 (Okla.1982); Merrill, Oklahoma's New Administrative Procedure Act, 17 Okla.L.Rev. 1, 2–3 (1964).

1981, §§ 309–323. *See* 75 O.S.Supp.1989, § 250.1(A).[6]

We start with the proposition ODH is a State agency subject to the OAPA[7] and it is not one of those State agencies specifically exempted from compliance with Article II of the OAPA.[8] This recognition on our part, however, does not answer the question at hand and we must look to the specific provisions of the OAPA in regard to the granting of permits under the OSWMA to determine legislative intent *as to whether OAPA provisions alone mandate compliance with Article II.*

75 O.S.1981, § 314(a) of the OAPA provides as follows:

> *When the grant,* denial, or renewal *of a license is required to be preceded by notice and opportunity for hearing, the provisions of [the OAPA] concerning individual proceedings apply.* (emphasis added)

A license is defined in the OAPA as, "[T]he whole or part of any permit, certificate, approval, registration, charter, or similar form of permission required by law." 75 O.S.Supp.1989, § 250.3(3).[9] We have little trouble ruling a permit like that involved here issued under the OSWMA falls within the definition of a license under the OAPA. It is a permit required by law pursuant to the mandate of the OSWMA. 63 O.S.1981, § 2260(5) places a duty on ODH, among other things, "to issue ... permits for the establishment, construction and the operation or maintenance of solid wastes disposal sites and facilities." The question presented here is, however; when

is the granting of such a permit that falls under the definition of license under the OAPA subject to the provisions of that Act concerning individual proceedings? In our view the answer to this question is *when either by a statute other than the OAPA or because of constitutional mandate the issuance of such a permit is required to be preceded by a trial-type hearing.* It is further our view only when an *opportunity* is so required for a trial-type hearing, i.e. one subject to the individual proceeding mechanisms of the OAPA will an appeal from such issuance lie under § 318.

In the RMSAPA the term individual proceeding does not appear. The term utilized therein which corresponds to it is contested case. Contested case is defined in the RMSAPA as follows:

> [A] proceeding, including but not restricted to ratemaking, [price fixing], and licensing, in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after opportunity for hearing. 14 U.L.A. Civil Proc. 371, § 1(2).

The term individual proceeding in the OAPA is merely defined as, "[T]he process employed by an agency for the formulation of an order." 75 O.S.Supp.1989, § 250.3(6), formerly 75 O.S.1981, § 301(7).[10] We believe the *process* referred to in the definition for individual proceeding in the OAPA is spelled out at §§ 309–317 of that Act and these sections, by their terms, afford opportunity for a trial-type proceeding.

---

**6.** Although the OAPA has been extensively modified recently, primarily in regard to the rulemaking function of administrative agencies [Article I of the OAPA, 75 O.S.Supp.1989, §§ 250.3–308.2], the provisions relating to individual proceedings have largely remained unchanged since passage of the OAPA in 1963.

**7.** *Conoco, Inc. v. State Department of Health,* 651 P.2d at 127, note 5, *supra.*

**8.** 75 O.S.Supp.1989, § 250.4(B) sets forth those State agencies or classes of agency activities specifically exempted from compliance with the provisions of Article II of the OAPA. ODH is not among those agencies exempted nor is the granting of a permit under the OSWMA so exempted.

**9.** This definition has remained unchanged since promulgation of the OAPA in 1963. 75 O.S. Supp.1963, § 301(3).

**10.** The definition appears to have been taken from the Federal Administrative Procedure Act definition of the term adjudication, which is defined currently as, "[A]gency process for the formulation of an order." 5 U.S.C.S. § 551(7) (1989). The definition of adjudication in the federal act at the time of passage of the OAPA was contained at 5 U.S.C. § 1001(d) (1958) in a definition for both the term order and adjudication. There was no distinction in the definition of adjudication there, from the current one.

Section 14(a) of the RMSAPA corresponds exactly with § 314(a) of the OAPA quoted above except the term contested case is substituted for the term individual proceeding. A leading commentator on the OAPA, Maurice H. Merrill, in an article published shortly after passage stated, in part, regarding this provision:

Whenever grant, denial or renewal of a license is 'required to be preceded by notice and opportunity for hearing,' the commands of the [OAPA] governing individual proceedings are applicable. A word of caution is necessary here. The requirement of notice and hearing in cases of this sort does not depend alone upon stipulation by state statutes or by state constitutions. The decisions of the Supreme Court of the United States are making it crystal clear that wherever a license from the state involves interests of occupation or of substance, there is at least a 'liberty,' if not 'property,' involved, protected by due process of law against denial (and so, obviously, against revocation or refusal to renew) without cause, established after hearing and upon due notice.[11] (citations omitted)

As we read this comment it was an acknowledgment that the OAPA was not itself a mandate that the individual proceeding mechanisms contained therein be followed in regard to all actions taken by an agency relating to permits, but a recognition that such proceedings would only be required *if, and only if, another source of law required action in regard to a permit to be preceded by notice and opportunity for a hearing.* The source of this law, in Merrill's view, was either another State statute, the State Constitution or the United States Constitution. In such regard, we are in agreement with Merrill's analysis.

We are further of the view only when opportunity for individual proceedings (i.e. trial-type proceedings as those envisioned generally by §§ 309–317 of the OAPA) are required by these other sources is the action of an agency *in granting a permit* subject to judicial review under § 318 of the OAPA. Section 318(1) of the OAPA provides in pertinent part as follows:

Any person or party aggrieved or adversely affected *by a final order in an individual proceeding,* whether such order is affirmative or negative in form, is entitled to certain, speedy, adequate and complete judicial review thereof under this act.... (emphasis added)

The above provision by its terms does not allow judicial review of all agency action which may culminate in the granting of a permit. Only if a permit is a final order *in an individual proceeding* is judicial review under § 318 allowed, assuming, of course, the person or party seeking review is aggrieved or adversely affected by the final action of the agency.

In that § 318 only allows judicial review of final orders (including permits) in an individual proceeding we believe the Legislature intended such judicial review *under the OAPA* only when an *opportunity* is afforded for the trial-type proceedings spelled out in the OAPA. To rule otherwise would mean the Legislature intended to give the term "individual proceeding" *two separate meanings in the same Act,* a view we believe not contemplated. One, as used in § 318, when read in conjunction with § 314(a) in regard to a final order granting a permit *not* required by statute or constitutional mandate to be preceded by notice and opportunity for hearing, it meant *any lawful process* devised by either it or the agency, under legislative authority, in the decision granting such a permit, even though said process was not required to comply with the adjudicatory process contained at §§ 309–317 concerning individual proceedings. Two, but in those situations where the granting of a permit *was* required to be preceded by notice and opportunity for hearing it meant by the term "individual proceeding" those trial-type procedures spelled out in §§ 309–317. Only by giving such a tortured construction to the legislative language would we be able to rule judicial review was allowed in both these situations.

---

**11.** Merrill, Oklahoma's New Administrative Procedure Act, note 5, *supra,* at 39–40.

Such a tortured construction of legislative intent is not warranted. The more reasonable construction of the OAPA and the one we believe was intended by the Legislature when it enacted the OAPA is that the term individual proceeding refers to only one process and it has only one meaning, to wit: the trial-type process delineated by the Legislature in §§ 309–317 of the Act and only when opportunity for such process is required by separate statutory or constitutional mandate will judicial review be appropriate under the OAPA to test agency action in granting a permit.[12] Although we may think it more prudent public policy for more agency action to be subject to judicial review under the OAPA this is a determination for the Legislature, not this Court.[13]

## II. NO STATUTORY SOURCE EXISTS FOR OPPORTUNITY FOR HEARING IN THE GRANTING OF A PERMIT UNDER THE OSWMA

█ The OSWMA was passed by the Legislature in 1970 with the express purpose of regulating the collection and disposal of solid waste in a manner that will protect public health, safety and welfare, prevent water or air pollution, prevent the spread of disease and creation of nuisances, conserve land and natural resources, enhance the beauty and quality of the environment and encourage recycling of solid waste. 63 O.S.1981, § 2252. The State agency with primary oversight under the Act is ODH. The Act further allows local governing bodies such as counties, municipalities and regional districts a role in planning and participating in the collection and disposal of solid waste. However, with extremely limited exceptions, all sites for the disposal of solid waste must be permitted by ODH under rules and regulations promulgated by the agency, 63 O.S.Supp. 1986, § 2258 [formerly 63 O.S.1981, § 2258], and ODH has been given authority to issue, continue in effect, revoke, modify or deny permits for disposal sites and facilities. 63 O.S.1981, § 2260. The State Board of Health has further been given broad authority under the Act to promulgate rules and regulations concerning the transportation of solid waste and disposal sites, including location, construction, operation and maintenance thereof, and these rules are required to be promulgated and adopted in compliance with the OAPA. 63 O.S.Supp. 1986, § 2259 [formerly 63 O.S. 1981, § 2259].

---

**12.** Our ruling in this regard is in conformity with the generally accepted rule of statutory construction that where a word or phrase is used in different parts of a statute or act it will be presumed to have the same meaning throughout; and where its meaning in one instance is clear, this meaning will apply elsewhere therein, unless it plainly appears from the whole statute the Legislature intended to use it in a different sense. *Walton v. Donnelly,* 83 Okl. 233, 201 P. 367, 370 (1921). In our view, the term individual proceeding as used in the OAPA refers to and was intended by the Legislature to mean throughout that Act the trial-type *process* delineated therein in Article II.

**13.** Neither this Court nor any court has the power to act as a super-legislature by re-writing legislative enactments to conform with its views of public policy. *Toxic Waste Impact Group, Inc. v. Leavitt,* 755 P.2d 626, 630 (Okla.1988).

Although we must interpret our administrative procedure act individually and the interpretations by courts of other jurisdictions are, of course, *not* dispositive, decisions we find sound lend support to our ruling, particularly in their acknowledgement that decisions of this type must be made as a matter of statutory construction. In such regard, the Supreme Court of Connecticut has determined an administrative decision not required to be preceded by an adversarial hearing by a *statute* separate from its Uniform Administrative Procedure Act is not subject to judicial review thereunder. *Ardmare Construction Company, Inc. v. Freedman,* 191 Conn. 497, 467 A.2d 674 (1983); *Rybinski v. State Employees Retirement Commission,* 173 Conn. 462, 378 A.2d 547 (1977). The Supreme Court of Wyoming has held a teacher who had a voluntary transfer application denied by a school board was not entitled to judicial review under the contested case provisions of its administrative procedure act. *Diefenderfer v. Budd,* 563 P.2d 1355 (Wyo.1977). Judicial review was allowed in any event because Wyoming's act specifically provided for judicial review not only from "a final decision of an agency in a contested case", but from "other agency action or inaction". *Id.* at 1360. No such additional language is contained in § 318 of our OAPA. The *Diefenderfer* decision also reaffirmed the Wyoming Court's previous holding that to be a contested case the matter must be one which is to be determined after an opportunity for a trial-type hearing. *Id.* at 1359.

Prior to granting a permit ODH, as already noted, was required to hold a "formal public meeting" *when requested* by any person residing or doing business in the State for the opportunity to present written and oral views in opposition to granting the permit. 63 O.S.Supp.1983, § 2258.2. No other provision of the OSW-MA expressly required holding any type of proceeding prior to the granting of a permit. To determine the question of whether any statutory basis currently exists in the OSWMA for a finding of Legislative intent that the granting of a permit be preceded by opportunity for a hearing we must decide if the Legislature intended this meeting to be synonomous with the term hearing (i.e. a trial-like individual proceeding under the OAPA) *and* the meaning of § 2259 that rules must be promulgated and adopted in compliance with the OAPA. We begin with the language of § 2259.

The language pointed to in § 2259 to support Appellants' argument that individual proceedings were required prior to the granting of the permit is as follows: "Rules and regulations authorized under the provisions herein shall be promulgated and adopted in compliance with the Administrative Procedures Act of 1963 (Sections 301–325 in Title 75 of the Oklahoma Statutes)." Appellants assert this language evidenced an intent by the Legislature to mandate compliance with the trial-type proceedings of the OAPA in all permit granting decisions of ODH under the OSWMA. We disagree.

The quoted language is hardly a specific expression of legislative intent that all landfill permits granted by ODH be preceded by an opportunity for hearing embodied in the individual proceeding mechanisms of the OAPA. In our view, the words used *first import* a command by the Legislature that any rules or regulations passed by the agency in relation to its responsibilities to regulate solid waste disposal sites must be promulgated and adopted pursuant to the *procedures* outlined in the OAPA for the passage of rules spelled out in what is now known as Article I of the OAPA. 75 O.S. Supp.1989, §§ 250.3–308.2. These provisions mandate detailed procedures which must be followed by agencies when promulgating rules under authority vested in them by the Legislature.[14] Nothing in these procedures mandates an agency hold an individual proceeding prior to the granting of every permit.

Secondly, it must be remembered ODH in § 2260(5) was given authority not only to *issue* permits relating to disposal sites, but to *continue in effect, revoke or modify such permits*. In relation to these latter decisions §§ 314(b) & (c) *do* require certain minimal procedures be followed *prior to* any effective agency action, except in emergency situations. The licensee is to receive notice of the intended agency action and be given an opportunity to show compliance with all lawful requirements for retention of the license.[15] Thus, rather than evidencing any intent of the Legislature to require all *grants* of permits be preceded by opportunity for a trial-type hearing in compliance with the OAPA we believe it was simply a recognition by that body that certain actions of ODH in carry-

---

**14.** No assertion is made here that the rules and regulations promulgated by the State Board of Health were not in compliance with these procedures of the OAPA.

**15.** Sections 314(b) & (c) provide as follows:

(b) When a licensee has made timely and sufficient application for renewal of a license or a new license with reference to any activity of a continuing nature, the existing license does not expire until the application has been finally determined by the agency, and, in case the application is denied or the terms of the new license limited, until the last day for seeking review of the agency order or a later date fixed by order of the reviewing court.

(c) No revocation, suspension, annulment, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license. If the agency finds that public health, safety, or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined.

ing out its responsibilities under the OSWMA would involve some situations falling under what is now Article II of the OAPA, such as revocation of a license.[16] Accordingly, § 2259 of the OSWMA does not provide a statutory basis mandating *the grant of a permit* be preceded by an individual proceeding governed by the OAPA.

■ The only other possible statutory basis is § 2258.2 in relation to ODH holding a "formal public meeting" upon request of anyone residing or doing business in Oklahoma. We hold this meeting was not intended by the Legislature to provide a statutory basis for invocation of the individual proceeding mechanisms of the OAPA.

Initially, the plain meaning of the words used by the Legislature do not evidence an intent that the meeting required by § 2258.2 is synonomous with the term hearing. Meeting is defined in various ways at page 1195 in the 1987 Random House Dictionary of the English Language, Second Edition, none of which import a meaning like the trial-type proceedings of the OAPA. The second definition contained there and the one we believe comports with ordinary usage of the term is as follows: "an assembly or conference of persons for a specific purpose". In regard to the OSWMA, the assembly is for the specific purpose of allowing those people attending to express their views, either orally or in writing, in opposition to the granting of the permit. In contrast, the same dictionary defines the term hearing via the fourth definition therein as: "an instance or a session in which testimony and arguments are presented, esp. before an official, as a judge in a lawsuit". *Id.* at 882. In our reading of § 2258.2 nowhere is it expressed therein that testimony or evidence in the sense contemplated by Article II of the OAPA concerning individual proceedings was intended.

In addition to its responsibilities in regard to solid waste disposal sites under the OSWMA the ODH has also been given certain powers and duties under the Controlled Industrial Waste Management Act (OCIWMA), 63 O.S.1981, § 1–2001 et seq., as amended. Controlled industrial waste is defined at § 1–2002(1) of the OCIWMA and includes materials toxic to human, animal, acquatic or plant life, such as explosives, flammable liquids, spent acids, caustic solutions, poisons, containerized gases, sludge, tank bottoms containing heavy metallic ions, toxic organic chemicals, infectious materials and materials contaminated with any of these substances. ODH is empowered to issue permits for controlled industrial waste facilities. 63 O.S.Supp.1986, § 1–2004(1). Prior to any such permit being issued under that act ODH *must* hold a "public hearing" where affected property owners or a qualified interest group, as defined, requests such a hearing and it is made clear in the OCIWMA, that ODH *must afford opportunity for presentation of testimony and evidence at this proceeding.* 63 O.S.1981, § 1–2006(D).[17] As is obvious, the language of the OCIWMA, *in contrast to the language used in § 2258.2,* evidences legislative intent that opportunity for a trial-type hearing like that envisioned by Article II of the OAPA be afforded. In that § 1–2006(D) was in place at the time § 2258.2 of the OSWMA was promulgated by the Legislature in 1983 and it shows that body knew how to impose a requirement for a trial-type *hearing* we deem it unlikely the Legislature would use the term meeting in an act in the same general area (i.e. waste disposal) to be synonymous with the term hearing, as contemplated in the trial-like proceedings of the OAPA.

---

**16.** We have recognized the applicability of § 314(c) in regard to service of notice in an agency proceeding to revoke a medical license. *State v. Bridwell,* 592 P.2d 520 (Okla.1979).

**17.** Affected property owners are defined in the OCIWMA at § 1–2006, subd. A(1) as, "all real property owners within one (1) mile of the outer perimeter of the proposed site" and qualified interest group as, "any organization with twenty-five or more members who must be legal residents of the State of Oklahoma, that expresses an interest in the outcome of the construction permit application". § 1–2006, subd. A(2). Affected property owners are required to be notified by the applicant upon submission of an application for a construction permit. § 1–2006(B).

We deem it more likely the Legislature, when it promulgated § 2258.2, was attempting to comply with the spirit of certain federal regulations promulgated by the Environmental Protection Agency partially under the authority of the Federal Solid Waste Disposal Act.[18] 40 C.F.R. §§ 256.60 et seq. (1989) sets forth both requirements and recommendations for public participation in regard to both state and substate activities involved with the management of solid waste disposal facilities. These regulations have been in effect since at least 1981. 40 C.F.R. § 256.63 of these regulations provides as follows:

(a) Before approving a permit application (or renewal of a permit) for a resource recovery or solid waste disposal facility the State shall hold a public hearing *to solicit public reaction and recommendations on the proposed permit application if the State determines there is a significant degree of interest in the proposed permit.*

(b) This hearing shall be held in accord with 40 CFR 25.5. (emphasis added)

Although the term hearing is used in § 256.63 the plain meaning of the underlined language above does not indicate any intent that said hearing is to be adjudicatory in nature. On the contrary when one reviews § 25.5 it becomes clear usage of the term "hearing" therein and in § 256.63 *does not* denote an adjudicatory type proceeding as envisioned by the OAPA and we believe this is why the Legislature utilized the term meeting in § 2258.2, i.e. so any confusion would be avoided with how the term hearing is normally understood. Section 25.5 provides in pertinent part as follows:

(a) Applicability. *Any non-adjudicatory* public hearing, whether mandatory or discretionary ... shall meet the following minimum requirements. (emphasis added)

Thus, these federal regulations lend support to our view § 2258.2 was not a legislative mandate that landfill permits be pre-ceded by opportunity for a trial-type proceeding.

One final matter will be noted in regard to whether § 2258.2 provided a statutory basis for opportunity for a hearing comporting with the individual proceeding mechanisms of the OAPA. As stated in note 1, *supra*, the 42nd Oklahoma Legislature amended the OSWMA. Senate Bill No. 153 substantially amended § 2258.2. The amended provision, which will become effective September 1, 1990, provides as follows:

A. An applicant for a permit for a new disposal site, upon filing of the application with the Department, shall give notice of the opportunity for the public to request a public meeting to present views concerning the permit application. Notice shall be given by:

1. one publication in two (2) newspapers local to the proposed disposal site; and

2. certified mail, return receipt requested, to any person who holds surface title to any real property on the date of application within one-half (½) mile of the permitted boundary of the proposed disposal site.

If within thirty (30) calendar days of the publication of such notice [ODH] receives from any person residing or doing business in Oklahoma a written request for such meeting, it shall hold the same no sooner than forty-five (45) days but not later than ninety (90) days after the expiration of the thirty-calendar day period, and allow opportunity for presentation of written and oral views. The applicant or a representative of the applicant shall be present at the meeting to respond to questions. Such meetings may be held in the offices of [ODH] or at a location convenient to the proposed disposal site if requested in the written request for such meeting. The Department shall structure such meeting to afford the greatest opportunity for citizen input. *Such meeting shall not be a quasi-judicial proceeding.*

---

**18.** The Federal Solid Waste Disposal Act is now found at 42 U.S.C.A. §§ 6901 et seq. ODH is the designated agency for all state purposes of the Federal Solid Waste Disposal Act. 63 O.S.1981, § 2261.

B. Beginning September 1, 1990, and within thirty (30) days of the date the public meeting is held or within ninety (90) days of the publication of the notice of application if no public meeting is requested, *any person who is a resident or owner of a business or land in the county, who may suffer environmental damage as a result of the construction and operation of the site, shall have the right to request and participate in a hearing as a party to an individual administrative proceeding on the permit.* The permit applicant shall also be a party. Parties shall have the right to present evidence to show [ODH], and [ODH] in making its decision will decide, whether the application meets the requirements of the [OSWMA] and the regulations of the State Board of Health. *The proceeding shall be conducted pursuant to the provisions of the [OAPA].* C. *The provisions of this section shall not affect any pending applications and any pending litigation related to the procedures by which [ODH] has issued permits before September 1, 1990.* (emphasis added)

Although not directly applicable here because of the proviso in subsection C. above, we believe *the addition* of subsection B., in rather clear terms, allowing for the opportunity for a hearing comporting with the individual proceeding mechanisms of the OAPA while at the same time still providing for a meeting in subsection A. *which is not adjudicatory* lends support to our holding that the meeting allowed by § 2258.2 was never intended by the Legis-

lature to be of an adjudicatory nature controlled by Article II of the OAPA. Accordingly, for all of the above reasons we hold there is no statutory basis in the current OSWMA allowing for an individual proceeding prior to the *granting* of a permit for a solid waste disposal facility.[19]

### III. NO CONSTITUTIONAL SOURCE EXISTS FOR OPPORTUNITY FOR HEARING INURING TO THE BENEFIT OF THESE LANDOWNERS

■ We have held a person is properly a party to an administrative proceeding by either being named as a party, becoming a party by applicable statute or *if his interest in the proceeding is of constitutional proportions.*[20] None of Appellants were named in the process leading up to issuance of the permit and as we have just seen no statutory basis exists for them to become a party entitled to an individual proceeding under the OAPA. We have further determined as a general matter that for a person to be entitled to a hearing to oppose the granting of a State license it must be shown *the legal or property rights* of the person will be adversely affected.[21] This affect must be direct, substantial and immediate, rather than contingent on some possible remote consequence or a mere possibility of an unknown future eventuality.[22] We have also held that whether a person has a right to contest an administrative action is largely a question of law.[23]

■ The allegations of Appellants here are basically that as a matter of either

**19.** We should note our decision here is not inconsistent with *Nunn v. Oklahoma State Department of Health,* 587 P.2d 988 (Okla.1978), where we reviewed under the OAPA the denial of a permit application under the OSWMA. At the time of our decision in *Nunn* a statute existed which allowed any person aggrieved by an order of ODH "denying, cancelling, suspending or revoking a license or permit, or any other order" to appeal to a district court. 63 O.S. Supp.1963, § 1–110. This statute was repealed effective July 1, 1984, prior to the issuance of the instant permit. 1984 Okla.Sess.Laws, ch. 158, § 2. Furthermore, *Nunn* involved denial of a permit, a situation not involved here, and review was requested by the applicant.

**20.** *First National Bank v. Oklahoma Savings and Loan Board,* 569 P.2d 993, 996 (Okla.1977).

**21.** *Id. First National,* note 20, *supra* involved the granting of a charter for a branch office to a savings and loan association and, in part, whether certain competitor banks were legally entitled to challenge the agency action in granting the charter.

**22.** *Missouri–Kansas–Texas Railroad Company v. State,* 712 P.2d 40, 42–43 (Okla.1985).

**23.** *Id.* at 42. *See also National Motor Club of Oklahoma v. State Insurance Board,* 393 P.2d 511, 514 (Okla.1964).

State or Federal constitutional due process they were entitled to a hearing *prior to* issuance of the permit under the OAPA because, they claim, their legally recognized interest in property (either their homes or businesses) have been or will be adversely affected. We disagree. The mere granting of a permit itself for one individual to use their land for a landfill does not invade a legally recognized interest of adjoining landowners. Most of the claims of the Appellants are speculative, at best, and in actuality concern possible remote future eventualities, such as whether the landfill will at some time become a nuisance. They cannot base a claim to due process on such a possible remote occurrence. Although we obviously recognize it may be undesirable for one to have to live or work in close proximity to a solid waste disposal site we do not believe this undesirability alone rises to the level of a legal or property right in adjacent landowners to contest the granting of a landfill permit *at the administrative level*. Nor do we believe that diminishment in property values, even if such were supported by competent evidence (which on this record it is not), would afford any basis for an entitlement to contest the granting of the permit *prior to* issuance.

The due process clauses of both the Oklahoma and United States Constitutions protect individuals from deprivations of "life, liberty, or property, without due process of law." As we perceive Appellants assertions in this case they are claiming the deprivation of both a liberty and property interest. We deal with a potential liberty interest claim first.

Essentially, what Appellants claim is that *the quality of life*, either home life or work life, is harmed by the placement of a landfill near these environments. We do not believe either our constitution or the feder-

al constitution protect interests of this sort. The United States Court of Appeals for the Second Circuit was faced with an analogous claim when it decided neither a liberty or property interest was implicated in the decision of the City of New York to locate a shelter for the homeless in a particular neighborhood.[24] It put it this way:

> [T]here is no basis for asserting a "liberty" interest in not having the City operate the shelter in plaintiff's neighborhood.... The Fourteenth Amendment does not impose upon states and localities either an Administrative Procedure Act to regulate every governmental action nor an Environmental Policy Act to regulate those governmental actions that may effect the quality of neighborhood life. Whether notice and hearing procedures should be instituted to broaden public participation in governmental decisions of the sort challenged in this case remains a matter for consideration by state and local legislative bodies.[25]

The Second Circuit has also determined that the mere diminution or decline in property values by state action *involving the use of other property does not deprive a person of property within the meaning of the Fourteenth Amendment and such a result is simply not a deprivation cognizable under that amendment.*[26] We believe such a position is sound and that diminution in property values alone does not implicate a recognized legal or property interest protected by due process. We think to rule otherwise would set a dangerous precedent and would be an unwarranted expansion of recognized due process concepts. It would open up a myriad of governmental actions to the same or similar arguments and we decline to reach such a result. We, thus, hold no constitutional basis exists under due process principles that would mandate Appellants be

---

**24.** *Bam Historic District Association v. Koch,* 723 F.2d 233 (2d Cir.1983).

**25.** *Id.* at 237.

**26.** *Id. Fusco v. State of Connecticut,* 815 F.2d 201, 206 (2d Cir.1987), *cert. denied* 484 U.S. 849, 108 S.Ct. 149, 98 L.Ed.2d 105 (1987). *See also Mehta v. Surles,* 720 F.Supp. 324 (S.D.N.Y.1989).

In *Mehta* it was held, in part, adjacent property owners had no right to any particular due process procedure in regard to a decision to place a community home for mentally retarded individuals next door even though they claimed diminution in the value of their property would be caused thereby.

granted a hearing *prior to* ODH's decision to permit the landfill site at issue here. For the same reasons just discussed we hold § 2258.2 is not unconstitutional under the due process clauses of either the Oklahoma or United States Constitutions because it only provides for publication ·notice and a public meeting, rather than some more particularized notice and opportunity for a trial-type hearing. Constitutionally, Appellants were entitled to no notice or a hearing of any type *prior to* issuance of the permit.

## IV. THE GRANTING OF THE PERMIT DOES NOT CONSTITUTE A TAKING OF APPELLANTS' PROPERTY

 Appellants' final argument in this case is that *granting a permit* for a solid waste disposal facility at the involved location, being in relative close proximity to their property, constitutes a taking of their property without just compensation. We initially dispose of Appellants' argument

that diminution in the value of their property alone constitutes a taking. The United States Supreme Court has made it quite clear that a decrease (even drastic decreases) in the value of property alone, even by government regulation which *restrict use of the property claimed to have been taken*, does not constitute a taking under the United States Constitution.[27] Our constitution provides no more protection for diminution in property values which may occur because of *use of adjoining property* for a public purpose under OKLA. CONST. art. 2, § 24.[28]

We, however, have recognized that a taking may occur if governmental action significantly interferes with the use and enjoyment of property,[29] but that action which merely impairs use of the property does not constitute a taking.[30] Normally, the question of sufficient interference with the use and enjoyment of the property which may constitute a taking is for the trier of fact[31] in an inverse condemnation action.[32] Appellants did not bring an inverse con-

**27.** *See e.g. Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 131, 98 S.Ct. 2646, 2662–63, 57 L.Ed.2d 631 (1978). *See also Florida East Coast Properties, Inc. v. Metropolitan Dade County*, 572 F.2d 1108, 1111 (5th Cir.1978), *cert. denied* 439 U.S. 894, 99 S.Ct. 253, 58 L.Ed.2d 240 (1978) (construction of jail/work release facility on land adjacent to plaintiff's residential property does not constitute taking based on diminution of value to plaintiff's property); *Ortega Cabrera v. Municipality of Bayamon*, 562 F.2d 91, 100–101 (1st Cir.1977) (diminution in value alone to plaintiff's property caused by municipal dump adjacent thereto does not constitute compensable taking). For the purpose of our discussion *of the diminution of value issue* in the taking context we assume the mere granting of a permit to a neighbor to use their land for a *privately owned landfill* sufficiently involves governmental action and a public purpose so that OKLA. CONST. art. 2, § 24 concerning the taking or damaging of private property *for a public purpose is implicated.* In *Champlin Petroleum Company v. Board of County Commissioners of County of Oklahoma*, 526 P.2d 1142 (Okla.1974), we did hold *operation of a county landfill* was for a public purpose.

**28.** We have specifically held that in the absence of physical injury to property or of an appurtenant right thereto OKLA. CONST. art. 2, § 24 has no application to depreciation of market value of land used for residential purposes caused by erection of city jail in close proximity thereto, in absence of showing the jail has become a nuisance. *City of Geary v. Moore*, 181

Okl. 616, 75 P.2d 891, 892–893 (1938). *See also City of McAlester v. King*, 317 P.2d 265, 268 (Okla.1957) (depreciation in value of residential property alone caused by erection of city water tower on adjacent land does not constitute a compensable taking).

**29.** *Mattoon v. City of Norman*, 617 P.2d 1347, 1349 (Okla.1980); *Henthorn v. Oklahoma City*, 453 P.2d 1013, 1014–1016 (Okla.1969).

**30.** *Suntide Inn Operating Corporation v. State ex rel. Oklahoma State Highway Commission*, 571 P.2d 1207 (Okla.1977).

**31.** *Mattoon v. City of Norman*, note 29, *supra* at 1349.

**32.** Inverse condemnation has been aptly distinguished from a proceeding in eminent domain by the United States Supreme Court in *Agins v. Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). It said there:

Inverse condemnation should be distinguished from eminent domain. Eminent domain refers to a legal proceeding in which a government asserts its authority to condemn property. [ ] Inverse condemnation is "a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted." (citations omitted) *Id.* at 258, f.n. 2, 100 S.Ct. at 2140, f.n. 2.

demnation action. Instead, they argue the *mere granting of a permit* to their neighbor to construct and operate a solid waste facility in close proximity to their property itself constitutes a taking. We disagree and we are aware of no case which so holds.

Although Appellants have essentially taken the position ODH has granted a permit which makes their land unusable by authorizing the creation of a nuisance which damages them, we believe these assertions are mere hyperbole.[33] The State has taken the responsibility of permitting these sites in an effort to protect the public health, safety and welfare of the people and to protect the environment. 63 O.S. 1981, § 2252. This action on the part of the State is a classic example of reasonable exercise of the police power. Although a valid exercise of the police power will not necessarily insulate the sovereign from paying compensation to those injured thereby,[34] *the granting of the permit itself does not interfere with the use and enjoyment of the Appellants' property in a constitutional sense.* Any interference will occur, if at all, *by operation* of the landfill by private individuals or entities. For us to conclude otherwise we would have to rule, as a matter of law, all landfills are nuisances and the State by permitting them in an effort to protect the public health and environment must itself pay compensation to individuals who at some subsequent time in the future may be injured by their operation. We know of no constitutional principle, State or federal which requires such a result.[35]

If we did so rule it would produce the rather anomalous result that had the State not chosen to permit landfill sites based on standards meant to protect the public health and environment no compensation would be due from the State, but by regulating landfills to protect these interests the State would thereby become liable. We decline to so rule and instead hold the State is not liable to pay compensation to landowners adjacent to a private landfill merely because it permits such a site.

Our ruling here does not leave individuals like Appellants without a remedy. This Court has long recognized that a private cause of action exists under OKLA. CONST. art. 2, § 23 in favor of adjoining landowners who are injured by the operation of a lawful business conducted on neighboring property.[36] Therein lies their remedy, not in an action against the State for a constitutional taking based on the mere granting of a permit to their neighbor.

For all of the above reasons the decision of the Court of Appeals is VACATED and the decision of the trial court is AFFIRMED.

HARGRAVE, C.J., and SIMMS, DOOLIN and SUMMERS, JJ., concur.

OPALA, V.C.J., and HODGES, KAUGER and WILSON, JJ., dissent.

---

**33.** The United States Supreme Court in *Agins v. Tiburon,* note 32, *supra* at 260, 100 S.Ct. at 2141 has recognized that land use regulations do not normally effect a taking of property as long as the regulations substantially advance legitimate state interests and do not deny a landowner economically viable use of his land. Thus, if Appellants were actually correct that the mere granting of the permit to a neighbor made their land unusable their position might be sound. However, it is not the granting of the permit which may so interfere with use of their property, but the actual use of that permit through operation of the landfill.

**34.** *Mattoon v. City of Norman,* note 29, *supra* at 1349.

**35.** The Environmental Protection Agency has recognized that, "[s]anitary landfilling is the most widely applied environmentally acceptable land disposal method." 40 C.F.R. § 241.100 (1989).

**36.** *British–American Oil Producing Co. v. McClain,* note 2, *supra,* 126 P.2d at 532–534.