**DOUBLE "LL" CONTRACTORS, INC., Appellee.**

v.

**STATE of Oklahoma, ex rel. OKLAHOMA DEPARTMENT OF TRANSPORTATION, Appellant.**

**No. 81149.**

Supreme Court of Oklahoma.

Feb. 27, 1996.

Rehearing Denied June 12, 1996.

Juliet N. Brennan, D.D. Hayes, Bonds, Matthews, Bonds & Hayes, Muskogee, for Appellee.

Louis D. Persons, II, State of Oklahoma ex rel. Department of Transportation, Oklahoma City, Cydney Campbell, Dennis Box, Williams, Box, Forshee & Bullard, Oklahoma City, for Appellant.

ALMA WILSON, Chief Justice:

Double "LL" Contractors, Inc. (Double "LL") is an Oklahoma corporation engaged principally in the business of bridge construction. For most of its existence, Double "LL" has been certified as a Disadvantaged Business Enterprise (DBE) as part of a federal program designed to assist business entities owned and operated by members of disadvantaged groups, primarily ethnic minorities and women, that bid for contracts in highway construction projects. The program is administered jointly by the Oklahoma Department of Transportation (ODOT) and the United States Department of Transportation (USDOT). The criteria and procedures of the program are established by federal statutes and by rules and regulations promulgated by USDOT. Certification of business entities as DBEs is the responsibility of ODOT. Once certified, a DBE is open to periodic review by ODOT in order to determine whether certification should be continued. In the event that certification is revoked, the aggrieved party may appeal to USDOT which can either affirm or reverse ODOT's decision.

In 1991, the Operations Review & Evaluations Division of ODOT conducted an audit of Appellee as a part of a DBE qualifications review and concluded that Double "LL's" certification should be revoked. ODOT notified Double "LL" that it was to be decertified and that it could request a hearing before a DBE Board as provided for by federal law. Following Double "LL's" request, three days of oral evidentiary hearings were held in October of 1991 at which Appellee was represented by counsel. On January 14, 1992, the Board confirmed the decertification.

After the Board's decision, Double "LL" sought and received an injunction from the District Court of Muskogee County temporarily restraining ODOT from implementing the decertification. Double "LL" also sought the court's review of ODOT's order. ODOT moved for Summary Judgment arguing that the court lacked jurisdiction. The court found that it had jurisdiction, reviewed and

reversed ODOT's order, and instructed the agency to reinstate Double "LL's" DBE certification.

The issue before this Court is whether the district court had jurisdiction to review ODOT's order. We hold that it did not.

Section 318 of the Oklahoma Administrative Procedures Act (OAPA) creates a cause of action for judicial review of administrative actions taken by state agencies.[1] Judicial review is available to parties who have been aggrieved by the final order of an agency in an individual proceeding. 75 O.S.1991, § 318. However, if the process out of which the final order is made is not an individual proceeding or if the order is not final, then a cause of action does not lie and judicial review is improper.

1. At the time of the litigation of the case at bar, the relevant provisions of section 318 read as follows:

"(1) Any person or party aggrieved or adversely affected by a *final order in an individual* proceeding, whether such order is affirmative or negative in form, is entitled to certain, speedy adequate and complete judicial review thereof under this act, but nothing in this section shall prevent resort to other means of review, redress, relief or trial de novo, available because of constitutional provisions....

"(2) The judicial review prescribed by this section, as to orders rendered in individual proceedings by agencies whose orders are made subject to review, under constitutional or statutory provisions, by appellate proceedings taken in accordance with the procedure and under the conditions otherwise provided by law, but subject to the applicable provisions of Sections 319 through 324 of this title, and the rules of the Supreme Court. In all other instances, proceedings for review shall be instituted by filing a petition, in the district court of the county in which the party seeking review resides or at the option of such party where the property interest affected is situated within thirty (30) days after the appellant is notified of the order as provided in Section 312 of this title...." 75 O.S.1991, § 318.

The current amended version of the Act reads as follows:

"A. 1. Any party aggrieved by a final agency order in an individual proceeding is entitled to certain, speedy, adequate and complete judicial review thereof pursuant to the provisions of this *section and Sections 319, 320, 321, 322 and 323* of this title.

"2. This section shall not prevent resort to other means of review, redress, relief or trial de novo, available because of constitutional provisions."

\* \* \* \* \* \*

"B. 1. The judicial review prescribed by this section for final agency orders, as to agencies

In *Stewart v. Rood,* 796 P.2d 321, 326 (Okla.1990)[2], we held that the OAPA itself does not serve as an independent grant of jurisdiction for judicial review of the issuance of licenses by state agencies. However, we also held that if an agency is required by a statute other than the OAPA or by constitutional mandate to provide notice and opportunity for trial-type hearings when issuing licenses, then the agency's action comes within the scope of the OAPA's provisions concerning individual proceedings and is, thus, subject to judicial review under section 318. *Stewart,* 796 P.2d at 327–328. We reasoned that trial-type hearings were equivalent to the process of individual proceedings set forth in Article II of the OAPA.[3] *Stewart,* 796 P.2d at 327.

whose final agency orders are made subject to review, under constitutional or statutory provisions, by appellate proceedings in the Supreme Court of Oklahoma, shall be afforded by such proceedings taken in accordance with the procedure and under the conditions otherwise provided by law, but subject to the applicable provisions of Sections 319 through 324 of this title, and the rules of the Supreme Court.

"2. In all other instances, proceedings for review shall be instituted by filing a petition, in the district court of the county in which the party seeking review resides or at the option of such party where the property interest affected is situated within thirty (30) days after the appellant is notified of the final agency order as provided in Section 312 of this title...." 75 O.S.Supp.1992, § 318, 1992 Okla. Sess.Laws, ch. 310, § 14.

2. Overruled on other grounds by *DuLaney v. Oklahoma State Health Dept.,* 868 P.2d 676, 681–682 (Okla.1993).

3. At the time of *Stewart* as well as the case at bar, the OAPA defined "individual proceeding" as follows:

"7. 'Individual proceeding' means the process employed by an agency for the formulation of an order;" 75 O.S.1991, § 250.3(7). We reasoned that the process referred to in the definition was spelled out in §§ 309–317 of the OAPA and that those sections, "by their terms, afford opportunity for a trial-type proceeding." *Stewart,* 796 P.2d at 327.

The OAPA has since been amended to read:

"7. 'Individual proceeding' means the formal process employed by an agency having jurisdiction by law to resolve issues of law or fact between parties and which results in the exercise of discretion of a judicial nature." 75 O.S.Supp. 1992, § 250.3(7).

The OAPA defines "license" as follows: " 'License' includes the whole or part of any agency permit, certificate, approval, registration, charter, or similar form of permission required by law." 75 O.S.1991, § 250.3(3). We have no difficulty ruling that DBE certification operates as the issuance of a license as defined by the OAPA.

No state statute requires opportunity for trial-type hearings in the issuance of a DBE certification by ODOT.[4] However, the district court, citing *Stewart*, found a constitutional mandate that it reasoned brought the instant case within the scope of the OAPA, thus making itself competent to review ODOT's order. Double "LL" adopts the court's reasoning on appeal.

Double "LL" appears to make the following argument. Double "LL" possesses a constitutionally protected property interest in its DBE certification. It cannot be deprived of that interest without due process. The process due is a trial-type hearing. Therefore, ODOT is under a constitutional mandate to give notice and opportunity for a trial-type hearing if it is to revoke Double "LL's" certification. As a result, under *Stewart*, such a mandate brings ODOT's action within the scope of OAPA's provisions concerning individual proceedings and, thus, renders it subject to judicial review.

We need not reach the issue as to whether DBE certification is a property interest pro-

tected by due process nor whether the process due is a trial-type hearing because we conclude that the court lacked jurisdiction even if ODOT's action was taken as part of an individual proceeding.

■ We conclude that the district court was without jurisdiction for two reasons: First, the order of ODOT was not a final order as required for judicial review by section 318 of the OAPA; and, second, Double "LL's" resort to the courts violated the common law rule of exhaustion of administrative remedies. While the notions of finality and exhaustion are closely linked, it is helpful to maintain an analytical distinction when discussing them.[5] The distinction is presently appropriate because the notion of finality relevant to the instant case is tied to statutory language while the notion of exhaustion exists in the common law.

■ It is evident that ODOT's decertification of Double "LL" constituted an order as defined by the OAPA.[6] However, the question arises as to whether the order was final. If the order was not final then judicial review was not appropriate under section 318. Absent specific statutory provisions to the contrary, an order is final under section 318 when the administrative process ends and legal obligations resulting from that process are imposed. *Conoco v. State Dept. of Health*, 651 P.2d 125, 127 (Okla.1982).[7]

---

**4.** See the discussion *infra* of the Oklahoma Minority Enterprise Assistance Act which authorizes judicial review under the OAPA but from which ODOT is specifically exempted. 74 O.S. 1991, § 85.45 et seq.

**5.** See Davis and Pierce, Administrative Law Treatise § 15 (3d ed.1994).

**6.** "6. 'Order' means:

"a. all or part of the final or intermediate decision, whether affirmative, negative, injunctive or declaratory in form, by an agency in any matter other than rulemaking, rulings on motions, or objections made during the course of a hearing, or

"b. the exclusions described in subparagraphs a, b and e of paragraph 2 of this section." 75 O.S.1991, § 250.3(6).

The OAPA has since been amended to read:

"5. 'Order' means all or part of a formal or official decision made by an agency including but not limited to final agency orders;" 75

O.S.Supp.1992, § 250.3(5), 1992 Okla. Sess. Laws, ch. 310, § 2.

**7.** "Final order" was not defined in the 1991 version of OAPA. The amended Act defines "final agency order" at 75 O.S.Supp.1992, § 250.3(6), 1992 Okla. Sess.Laws, ch. 310, § 2, as follows:

" 'Final agency order' means an order made pursuant to subsection D of Section 309 and Sections 311 and 312 of this title and which is subject to judicial review...."

Section 311 in both the current and 1991 versions stipulates the circumstances in which, and the procedures by which, an aggrieved party can appeal a proposed order to the administrative head who will render the final order.

While changes in the Act refine the procedures employed in the rendering of final orders, they do not disturb this Court's construction of finality as pronounced in *Conoco*.

Moreover, the amended Act defines "final agency order" by reference to procedures involv-

In order to receive federal highway funds, ODOT is required by the Surface Transportation and Uniform Relocation Assistance Act of 1987 (STURAA)[8] to implement a DBE set-asides program in the awarding of contracts. All parameters of the DBE program are established by STURAA and by rules and regulations of the United States Department of Transportation (USDOT) as codified at 49 C.F.R. Part 23.

The State of Oklahoma operates its own separate DBE program. In 1987, the Oklahoma Legislature enacted the Oklahoma Minority Business Enterprise Assistance Act (OMBEA) which establishes preferences for Minority Business Enterprises (MBEs)[9] in the procurement of state contracts. 74 O.S. 1991, § 85.45. The act sets the criteria for determining whether a business entity is an MBE and empowers the State Purchasing Director to accord certification. 74 O.S.1991, § 85.45e. Any person adversely affected by the denial of certification may appeal according to procedures set forth in the OAPA. 74 O.S.1991, § 85.45e(D). However, the Legislature specifically exempted ODOT from the provisions of the OMBEA. 74 O.S.1991, § 85.45c(C). Exemption of ODOT from OMBEA evidences intent on the part of the Oklahoma Legislature to defer to the federal DBE program created by STURAA.

Consequently, the DBE program administered by ODOT is defined and regulated wholly by federal law. Federal statutes and USDOT rules and regulations not only establish the criteria for determining DBE certification but also provide for administrative remedy when certification is denied or revoked. Under 49 C.F.R. 23.55(a), a party whose DBE certification is revoked by a state agency has the right to appeal to USDOT. The Secretary of Transportation has the discretion to sustain decertification during the pendency of the appeal but only after

providing the aggrieved party with the opportunity to show cause by written statement as to why eligibility should continue. 49 C.F.R. 23.55(c). As a result, the administrative process does not end and legal obligations are not definitively imposed until USDOT considers the matter on appeal and either reverses or affirms decertification.

In the case at bar, ODOT denied Double "LL" continued DBE certification. Double "LL" then sought relief in state court before pursuing the available administrative remedy, namely, appeal to USDOT. Because the administrative process was not at an end, the order of ODOT to deny continued certification to Double "LL" was not a final order and, therefore, not subject to judicial review under the OAPA.

 The district court also lacked jurisdiction under the common law rule of exhaustion of administrative remedies. As a general rule, judicial review of an agency order is not permitted until all administrative remedies have been exhausted. *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938); *Lone Star Helicopters, Inc. v. State*, 800 P.2d 235, 237 (Okla.1990); *Martin v. Harrah Independent School District*, 543 P.2d 1370, 1372 (Okla.1975). However, premature judicial review is permissible when administrative remedies are inadequate. *Mattoon v. City of Norman*, 617 P.2d 1347, 1350 (Okla.1980). Remedies are inadequate when unavailable, ineffective or futile to pursue. *Lone Star Helicopters*, 800 P.2d at 237.

 In the instant case, the administrative remedy available to Appellee is the right to appeal to USDOT which has the authority to order certification. As a result, Double "LL" has the possibility to completely vindicate its claim within the prescribed administrative process. The available remedy is therefore

---

ing the administrative heads of state agencies. In the instant case, the final order is carried out by representatives of a federal agency. As a result, revocation of DBE certification by ODOT could not be a "final agency order" even under the current language of OAPA.

**8.** Surface Transportation and Uniform Relocation Assistance Act of 1987, Pub.L. No. 100–17, § 106(c), 101 Stat. 132, 145.

**9.** The term "Minority Business Enterprise" has been supplanted in federal legislation by the more accurate expression, "Disadvantaged Business Enterprise," reflecting the inclusion of women in set-asides programs. See Pub.L. 102–240, Title I, § 1003(b), Dec. 18, 1991, 105 Stat. 1919. However, the two terms are interchangeable.

adequate. Resort to early judicial intervention in such a situation interferes with the efficiency of the administrative process, the effectiveness and autonomy of agencies, and burdens the courts.[10]

█ This Court has also declared that the administrative process can be circumvented when the following elements are conjunctively present: 1) the presence of a constitutional question, 2) a sufficient showing of inadequacy of administrative relief, and 3) a sufficient showing of "threatened or impending irreparable injury resulting from delay incident to following the prescribed procedure." *Martin*, 543 P.2d at 1375. We have already established that adequate relief was available to Double "LL." Because the elements of the *Martin* exception are conjunctive, the absence of any one element disables invocation of the exception. As a result, the *Martin* exception does not apply to the instant case.

Because appeal to USDOT provided the opportunity for complete relief, we conclude that the administrative remedy available to Appellee was sufficiently adequate to preclude circumvention of the exhaustion rule.

█ Further, it is important to note that revocation of DBE certification by ODOT can never be a final order under section 318 of the OAPA because ODOT's adjudication is always subject to appeal to USDOT[11]. Only USDOT can issue a final order with regard to the revocation of DBE certification. Moreover, administrative remedies in cases such as the one at bar can only be exhausted by appeal to a federal agency. The question

arises, therefore, as to whether an Oklahoma court has jurisdiction to review the final order of a federal agency. We believe that it does not.

█ The doctrine of sovereign immunity precludes suits against the United States government without the consent of Congress. *United States v. Dalm*, 494 U.S. 596, 607, 110 S.Ct. 1361, 1367, 108 L.Ed.2d 548 (1990); *Block v. North Dakota*, 461 U.S. 273, 287, 103 S.Ct. 1811, 1819, 75 L.Ed.2d 840 (1983); *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). Congressional waiver of sovereign immunity must be "unequivocally expressed". *United States v. Nordic Village*, 503 U.S. 30, 33, 112 S.Ct. 1011, 1014, 117 L.Ed.2d 181 (1992); *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990) reh'g denied, 498 U.S. 1075, 111 S.Ct. 805, 112 L.Ed.2d 865 (1991); *Mitchell*, 445 U.S. at 538, 100 S.Ct. at 1351. Also see *United States v. Williams*, —— U.S. ——, ——, 115 S.Ct. 1611, 1616, 131 L.Ed.2d 608 (1995) ("Our task is to discern the 'unequivocally expressed' intent of Congress."). The waiver cannot be implied. *Irwin*, 498 U.S. at 95, 111 S.Ct. at 457; *Mitchell*, 445 U.S. at 538, 100 S.Ct. at 1351; *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). "Waivers of immunity must be 'construed strictly in favor of the sovereign,' *McMahon v. United States*, 342 U.S. 25, 27 [72 S.Ct. 17, 19, 96 L.Ed. 26] (1951), and not 'enlarge[d]' ... beyond what the language requires. *Eastern Transportation Co. v. United States*, 272 U.S. 675, 686

---

**10.** In *Mattoon v. City of Norman* at 1350, this Court derived the following justifications for the exhaustion rule from the United States Supreme Court's decision in *McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969):

"(1) that it is desirable for the agency to develop a factual background and judicial review may be hindered without it;

(2) agency decisions require discretion and expertise that the agency should have the first chance to exercise;

(3) it is more efficient to let the administrative process go forward without interruption;

(4) the agency should be autonomous and be given the chance to correct its own errors;

(5) the complainant may win in the administrative process, making judicial review unnecessary;

(6) frequent and elaborate flouting of administrative processes could weaken the agency's effectiveness by encouraging people to ignore its procedures."

**11.** We note that other courts under similar facts have not allowed the requirement of the exhaustion of administrative remedies doctrine to be circumvented in order to obtain state court jurisdiction where no state law is involved. See e.g., *Central Ohio Waterproofing Co. v. Smith*, 36 Ohio App.3d 195, 521 N.E.2d 1133, 1136 (1987); *LPG Const. Co., Inc. v. Commonwealth Dept. of Transp.*, 93 Pa.Cmwlth 474, 501 A.2d 360, 362 (1985).

[47 S.Ct. 289, 291, 71 L.Ed. 472] (1927)." *United States Department of Energy v. Ohio,* 503 U.S. 607, 615, 112 S.Ct. 1627, 1633, 118 L.Ed.2d 255 (1992) quoting *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685–686, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983). Also see *Williams,* —— U.S. at —— – ——, 115 S.Ct. at 1615–1616 (waiver may not be enlarged "beyond the purview of the statutory language"; ambiguous language to be construed in favor of immunity); *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 356, 62 L.Ed.2d 259 (1979) (the waiver cannot be extended or narrowed beyond that which Congress intended). "[T]he terms of [the sovereign's] consent to be sued in any court define that court's jurisdiction to entertain the suit." *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981) quoting *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *Mitchell,* 445 U.S. at 538, 100 S.Ct. at 1351. As a result, no court, state or federal, is competent to hear a cause of action for review of the administrative decisions of a federal agency absent an express Congressional waiver of immunity for such actions.

Section 10 of the original Administrative Procedure Act[12], presently codified at 5 U.S.C. §§ 701–706 (1994), creates a cause of action for judicial review of federal agency action for a person adversely affected or aggrieved by such action. 5 U.S.C. § 702 (1994). Agency action that is final or made reviewable by statute is subject to review. 5 U.S.C. § 704 (1994).

■ In 1976, the U.S. Congress enacted Public Law 94–574[13] which amended 5 U.S.C. § 702 to read in part: "An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party."[14] The purpose of the amendment was to facilitate judicial review of federal agency actions by eliminating the defense of sovereign immunity.[15] However, immunity was waived only for actions instituted in "a court of the United States." No waiver was made for actions brought in state courts. Because waiver cannot be implied

12. Administrative Procedure Act, ch. 324, Pub.L. No. 404, § 10, 60 Stat. 237 (1946) (current version at 5 U.S.C. §§ 701–706).

13. Judicial Review—Administrative Agency Actions, Pub.L. No. 94–574, 90 Stat. 2721.

14. As amended, 5 U.S.C. § 702 as follows:

"§ 702. Right of Review

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided,* That any mandatory or injunctive decree shall specify the Federal officer of officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action

or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."

15. House Report No. 94–1656 states:

"The proposed legislation would amend section 702 of title 5, U.S.C., so as to remove the defense of sovereign immunity as a bar to judicial review of Federal administrative action otherwise subject to judicial review." H.R.Rep. No. 94–1656, 94th Cong., 2d Sess. 1, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6121.

The report further states:

"As Government programs grow, and agency activities continue to pervade every aspect of life, judicial review of the administrative actions of Government officials becomes more and more important. Only if citizens are provided with access to judicial remedies against Government officials and agencies will we realize a government truly under law. The enactment of section one of S. 800—the partial elimination of the sovereign immunity defense in actions for equitable relief is an important step toward this goal." H.R.Rep. No. 94–1656, 94th Cong., 2d Sess. 10, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6130.

but must be express and unequivocal, and because its terms must be strictly construed in favor of immunity so as not to enlarge its scope beyond what the language requires, we conclude, based solely upon the terms of 5 U.S.C. § 702 (1994), that federal agencies are immune from suit for judicial review under the APA in state courts.

Our conclusion is consistent with the intent of Congress as expressed in the legislative history. House Report No. 94–1656 states:

"The first of the additional sentences provides that claims challenging official action or nonaction, and seeking relief other than money damages, should not be barred by sovereign immunity. The explicit exclusion of monetary relief makes it clear that sovereign immunity is abolished only in actions for specific relief (injunction, declaratory judgment, mandatory relief, etc.). Thus, limitations of the recovery of money damages contained in the Federal Tort Claims Act, the Tucker Act, or similar statutes are unaffected. *The consent to suit is also limited to claims in courts of the United States; hence, the United States remains immune from suit in state courts.*" [Emphasis added.]

H.R.Rep. No. 94–1656, 94th Cong., 2d Sess. 11, *reprinted in* 1976 U.S. Code Cong. & Admin.News 6121, 6131.

The Sixth Circuit Court of Appeals in *Federal National Mortgage Association v. LeCrone*, 868 F.2d 190 (6th Cir.1989), in analyzing section 702 and the legislative history of Pub.L. No. 94–1656, argued that "[i]f Congress had intended the state courts to be proper fora for suits seeking judicial review under the APA Congress would have waived sovereign immunity for suits in state courts as well. By refusing to waive sovereign immunity for APA actions in the state courts Congress has implicitly vested exclusive jurisdiction over these actions in the federal courts." *LeCrone*, 868 F.2d at 193.

We agree with the Sixth Circuit's reasoning. It is our determination that Congress did not intend that state courts have jurisdiction over APA causes of action. Because Congress refused to lift immunity for APA suits in state courts, the bar remains.

We are supported in our conclusion by the opinion of the Superior Court of New Jersey in *National State Bank v. Gonzalez*, 266 N.J.Super. 614, 630 A.2d 376 (1993). Plaintiff National State Bank brought a foreclosure action against Defendant Gonzalez in a New Jersey court. Gonzalez then filed a third party complaint against Henry Cisneros, Secretary of the United States Department of Housing and Urban Development, alleging that the Secretary had erred by refusing to provide her temporary mortgage assistance payments pursuant to the National Housing Act, 12 U.S.C. § 1715u(a). Invoking the doctrine of sovereign immunity and relying on *LeCrone*, the court dismissed Gonzalez's complaint for lack of subject matter jurisdiction.

As a result, because this Court and its inferior courts lack jurisdiction to review federal agency actions under the federal APA, should Double "LL" be dissatisfied with the result of its administrative appeal to USDOT, it must turn to the federal courts for relief.

Because the order by ODOT revoking Double "LL's" DBE certification was not a final order under section 318 of the OAPA and because administrative remedies had not been exhausted, review by the district court was improper.

CERTIORARI PREVIOUSLY GRANTED. OPINION OF THE COURT OF APPEALS VACATED. JUDGMENT OF THE TRIAL COURT REVERSED.

KAUGER, V.C.J., and HODGES, LAVENDER, SIMMS, HARGRAVE and SUMMERS JJ., concur.

OPALA and WATT, JJ., dissent.