BD. OF COUNTY COMMISSIONERS v. STATE ex. rel. OFFICE OF JUVENILE AFFAIRS



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:BD. OF COUNTY COMMISSIONERS v. STATE ex. rel. OFFICE OF JUVENILE AFFAIRS

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 BD. OF COUNTY COMMISSIONERS v. STATE ex. rel. OFFICE OF JUVENILE AFFAIRS
2021 OK CIV APP 40
Case Number: 119391
Decided: 09/03/2021
Mandate Issued: 10/21/2021
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2021 OK CIV APP 40, __ P.3d __

 
BOARD OF COUNTY COMMISSIONERS OF TEXAS COUNTY, STATE OF OKLAHOMA, Petitioners/Appellants,
v.
STATE OF OKLAHOMA, ex. rel. OFFICE OF JUVENILE AFFAIRS, and RACHEL HOLT, INTERIM DIRECTOR, Respondents/Appellees.
APPEAL FROM THE DISTRICT COURT OF
TEXAS COUNTY, OKLAHOMA
HONORABLE RYAN D. REDDICK, TRIAL JUDGE
AFFIRMED
Mary Gaye LeBeouf, Oklahoma City, Oklahoma, and
Jim W. Lee, Oklahoma City, Oklahoma, and
James Boring, District Attorney, Guymon, Oklahoma, for Petitioners/Appellants, 
Kevin L. McClure, Assistant Attorney General, Oklahoma Attorney General, Litigation Section, Oklahoma City, Oklahoma, for Respondents/Appellees.
THOMAS E. PRINCE, JUDGE:
¶1 This appeal stems from an Order by the trial court dismissing the claims of the Texas County Board of County Commissioners upon the basis of a lack of jurisdiction and venue. The Board initiated two cases against the Office of Juvenile Affairs following the elimination of funding for the juvenile detention center located in Texas County. The cases ultimately were consolidated by the trial court. The trial court dismissed the cases on the basis that the challenged action by OJA constitutes neither an individual proceeding nor rule-making. The Board sought reconsideration of the dismissal order and, in addition, alleged a violation of its right to due process. The trial court denied the Board's request for reconsideration. We affirm.
BACKGROUND
¶2 Prior to the challenged action by OJA, a contract for funding to operate a six- bed juvenile detention facility in Texas County existed between the Board and OJA. The most recent contract executed in 2018 provided for a base year from July 1, 2018 through June 30, 2019. The contract provided for two, one-year option periods. The first option period was from July 1, 2019 through June 30, 2020. The second option period was to commence on July 1, 2020.
¶3 On or about May 12, 2020, in an open meeting proceeding, OJA voted to amend the State Plan for Detention Services. As a result of the approval of the amendment to the State Plan, funding for the Texas County Juvenile Detention Facility was eliminated. On June 2, 2020, the Board filed a Motion to Reconsider, requesting the OJA to reconsider the decision to amend the State Plan, which was considered at the next meeting. At that meeting, the Motion to Reconsider failed for lack of a second.
¶4 On July 8, 2020, the Board filed a Petition for Appeal to the District Court, along with a Motion to Stay Pending Appeal. That action was filed in Texas County District Court, and assigned Case. No. CV-2020-52 ("Administrative Appeal"). OJA responded to that filing with a Motion to Dismiss (filed on July 30, 2020).
¶5 Next, on August 3, 2020, the Board filed a second lawsuit in which it sought declaratory and injunctive relief, also filed in Texas County District Court. The declaratory judgment action was assigned Case. No. CV-2020-58 ("Declaratory Judgment Action"). The OJA also responded to that filing with another Motion to Dismiss (filed on August 12, 2020).
¶6 In the Administrative Appeal, the Board alleged, in part, that it was seeking a review of an alleged final agency order by the OJA, pursuant to 75 O.S. §318. The Board further argued that OJA committed a breach of contract by failing to give the Board thirty days of notice that it did not intend to renew the contract.[1] In its Motion to Dismiss in the Administrative Appeal, OJA argued that the Administrative Procedures Act does not apply because § 318 only allows appeals to review a final agency order in an individual proceeding. OJA claimed that the vote to amend the State Plan for Detention Services did not constitute an individual proceeding and, as a result, the trial court had no jurisdiction to proceed with the lawsuit.
¶7 In the Declaratory Judgment Action, the Board alleged that it was seeking declaratory and injunctive relief, pursuant to 75 O.S. §306, upon the alleged basis that the challenged action was subject to the rule-making requirements of the APA. In the Petition for Declaratory Relief and Temporary Injunction, the Board reiterated its arguments from the first lawsuit that OJA violated its statutory mandates, violated the Open Meeting Act and violated the thirty-day notice provision contained in the contract between OJA and the Board. In response, OJA argued that when there is an action against state officials, venue lies in the county in which the cause or some part of it arose and also that the rule-making requirements within the APA did not apply. OJA argued that the Board was merely challenging a fiscal decision by OJA to cut its budget across the State and whether it had the statutory authority to do so. Consequently, according to OJA, venue is appropriate in Oklahoma County under the general venue statute, 12 O.S. §133, that governs actions against state officials and, also, regarding the merits of the case, OJA argued that declaratory relief was not appropriate because the APA rule-making requirements did not apply to the challenged action.
¶8 A hearing concerning the Motions to Dismiss was held on August 25, 2020.[2] Two things occurred at the hearing that are relevant to this appeal. In addition to determining that the action taken by OJA did not constitute rule-making, the trial court concluded that the question of jurisdiction was a mixed question of fact and law. The trial court denied the Motions to Dismiss at that time. After denying the Motions to Dismiss, the trial court set a hearing on the Board's Motion to Stay and claim for a Temporary Injunction. When discussing the matters to be presented at the hearing on the Motion to Stay, the following exchange occurred in open court:
MR. MCCLURE: My inclination without revealing too much of my tactics that I don't mind if you don't mind, is I will probably present witnesses at the motion -- at the hearing to establish the facts of -- that this was an individual action and therefore the Court still does not have to --
THE COURT: Yeah. Because one of the issues on that motion to stay is likelihood of success --
MR. MCCLURE: True.
THE COURT: -- right? And so I'll have to make a decision about that, and I don't know if that's -- if I'm supposed to base that on evidence on the pleadings or not, but I had thought that far ahead.
MR. MCCLURE: Right. Yeah. I laid out the issues for the temporary injunction and the permanent injunctions, and the Court can take whatever evidence it needs really.
THE COURT: To make those decisions. 
¶9 On August 31, 2020, the trial court held a hearing on the Board's Motion to Stay and claim for a Temporary Injunction. During that hearing, OJA presented a witness to establish the fact that the vote that took place, which amended the State Plan for Detention Services, was not an individual proceeding or rule making. At the conclusion of the hearing on the Motion to Stay, the trial court denied both of the Board's motions. OJA then renewed its Motions to Dismiss. The trial court advised that it would hear OJA's renewed Motions to Dismiss on September 4, 2020.
¶10 On September 4, 2020, a hearing was conducted via telephone. The trial court announced its ruling on the renewed Motions to Dismiss. Counsel for the Board argued that the Board was without prior notice that OJA would renew (on August 31, 2020) its Motions to Dismiss.[3] Notwithstanding counsel's due process argument, the trial court granted OJA's Motions to Dismiss at that time.
¶11 After the trial court granted OJA's Motions to Dismiss, the Board filed a Motion for Reconsideration. In the Motion for Reconsideration, the Board claimed that the trial court had jurisdiction, that Texas County was the appropriate venue and that its due process rights were violated. The trial court denied the Motion for Reconsideration and the Board initiated is appeal.
STANDARD OF REVIEW
¶12 The determination of whether the trial court had jurisdiction and/or was a proper venue entirely depends on the resolution of the following issues: whether the challenged action by OJA constituted rule making and/or stemmed from an individual proceeding. As the trial court noted, these issues represent mixed questions of law and fact.[4] When a question of statutory interpretation is involved, this Court applies a de novo standard of review. Christian v. Christian, 2018 OK 91, ¶5, 434 P.3d 941, 942. The "primary goal is to determine legislative intent through the 'plain and ordinary meaning' of the statutory language." Id. at 942. De novo review "involves an appellate court's exercise of a plenary, independent, and non-deferential reexamination of the trial court's rulings on issues of law." Johnson v. CSAA General Insurance Co., 2020 OK 110, ¶11, 478 P.3d 422, 427.
¶13 Orders granting motions to dismiss are reviewed de novo. Tyree v. Cornman, 2019 OK CIV APP 66, ¶4, 453 P.3d 497, 502. When reviewing the granting of a motion to dismiss, all allegations in the petition are taken as true. Id. at 502. The purpose of a motion to dismiss is to test the law of the claims, not the supporting facts. Choate v. Lawyers Title Insurance Corp., 2016 OK CIV APP 60, ¶20, 385 P.3d 670, 676.
¶14 The Board argues that its right to due process was violated by the trial court. Typically, the question of whether due process rights were violated in the context of an appeal from an individual proceeding is reviewed de novo. Cole v. State Dept. of Public Safety, 2020 OK 67, ¶6, 473 P.3d 467, 470. In this case, however, the Board complains that the trial court erred when it permitted OJA to present a witness during the hearing on August 31, 2020, and also when the trial court entertained OJA's renewed Motions to Dismiss during that hearing. These challenges are properly reviewed by this Court under an abuse of discretion standard of review. See Hicks v. Cent. Oklahoma United Methodist Ret. Facility, Inc., 2017 OK CIV APP 23, ¶ 24, 423 P.3d 684, 696 (where the Court utilized the abuse of discretion standard of review where the trial court had removed, as a sanction, the right to jury trial).
ANALYSIS
¶15 While the Board has set forth five propositions of error in Exhibit "C" of its Petition in Error form,[5] for analysis purposes, we have determined to treat them as raising essentially three questions: whether the Board's due process rights were violated, whether an individual proceeding occurred before the OJA and whether the challenged action by OJA was subject to the rule-making requirements in the APA. We will address each issue in turn.
The Due Process Rights of the Board Were Not Violated 
¶16 The trial court held three hearings in this matter. The first hearing (on August 25, 2020) addressed the Motions to Dismiss filed by OJA. The trial court denied the motions at that time, then set a second hearing to address the Board's request for a stay and/or a temporary injunction. During the first hearing on the Motions to Dismiss, counsel for OJA stated, on the record, that he intended to present a witness to give testimony regarding whether the action taken by OJA constituted an individual proceeding. The trial court recognized that one of the elements for it to consider when deciding whether a stay is appropriate was the Board's likelihood of success. Consequently, the Board was put on notice at that time that evidence would be presented on the issue of jurisdiction at the hearing on the Motion to Stay.
¶17 During the second hearing (on August 31, 2020) on the Board's Motion to Stay, OJA presented a witness to testify regarding the circumstances surrounding the vote to amend the State Plan for Detention Services. After the testimony was presented, OJA renewed its Motions to Dismiss. The trial court set the renewed Motions to Dismiss for further hearing on September 4, 2020.
¶18 When the parties appeared (via telephone) for the third hearing, on the Motions to Dismiss, the Board claimed that it was denied due process because it was not prepared to address the issue of jurisdiction at the hearing on the Motion to Stay. Due process, at a minimum, requires notice and an opportunity to be heard. Dani v. Miller, 2016 OK 35, ¶37, 374 P.3d 779, 795. "[W]hile it is a significant function of the courts that the litigation before them be determined and disposed of as rapidly as possible, it is also important that all litigants be given a reasonable opportunity to have their day in court, and to have their rights and liberties tried upon the merits." Beck v. Jarrett, 1961 OK 162, 363 P.2d 215, 218. A determination as to whether the Board received an appropriate level of process must be made on a case-by-case basis because the due process clause does not mandate any particular form of procedure. Citizens for the Protection of the Arbuckle-Simpson Aquifer v. Okla. Dept. of Mines, 2019 OK CIV APP 17, ¶47, 437 P.3d 1074, 1089.
¶19 Here, OJA announced in advance its intent to present a witness regarding the question of jurisdiction at the hearing on the Board's Motion to Stay. Additionally, the Board was given the opportunity to be heard at the first hearing with regard to the Motions to Dismiss. Therefore, the facts and circumstances of this case do not demonstrate that the Board's right to due process was violated. Specifically, in light of the exchange that occurred in open court between counsel and the trial court on August 25, 2020, and given the fact that a thorough presentation had previously occurred on the OJA's Motions to Dismiss, there was no violation of the Board's right to due process.[6]
An Individual Proceeding Did Not Occur Before the OJA
¶20 The issues of venue and jurisdiction are inextricably intertwined with the merits of both the Administrative Action and the Declaratory Judgment Action. Regarding the Administrative Action, 75 O.S. §318, allows for judicial review of a final order in an individual proceeding. Certainly, if the process out of which the OJA took action in this case constituted an individual proceeding, venue would have been proper in Texas County.[7] Here, however, the central issue with the Administrative Action is not a matter of venue, but the jurisdictional basis for the case: i.e., whether an individual proceeding occurred, thereby impacting the propriety of a § 318 judicial review. See Bird v. Willis, 1996 OK 116, 927 P.2d 547, 550--51 (holding that § 318 "provides judicial review only in those situations in which there has been a final order resulting from an individual proceeding"); Double LL Contractors, Inc. v. State ex rel. Oklahoma Dep't of Transp., 1996 OK 30, 918 P.2d 34, 37--38 (holding that "[j]udicial review is available to parties who have been aggrieved by the final order of an agency in an individual proceeding.").
¶21 An individual proceeding is defined as follows:
8. 'Individual proceeding' means the formal process employed by an agency having jurisdiction by law to resolve issues of law or fact between parties and which results in the exercise of discretion of a judicial nature;
75 O.S. § 250.3 (emphasis added).
¶22 We hold that the decision by OJA to amend the State Plan for Detention Services did not represent a resolution of any issues of law or fact between OJA and the Board. This was an operational decision by the OJA that rested solely within the scope of OJA's statutory authority. See 10A O.S. § 2-3-103D (providing authorization to OJA to "develop, adopt, and implement a . . . State Plan for the Establishment of Juvenile Detention Services . . ."). Consequently, there is no basis for the Board to argue that the decision by OJA to reduce the number of juvenile detention center beds that it would fund should be considered to have been an individual proceeding. See Stewart v. Rood, 796 P.2d 321, 326 & 328 (Okla.1990) (where the Court discussed the circumstances under which the APA allows an opportunity for a trial-type proceeding and judicial review), overruled on other grounds by DuLaney v. Oklahoma State Dep't of Health, 1993 OK 113, 868 P.2d 676, 683 (overruling Stewart by holding that adjacent landowners have a "constitutionally protected interest sufficient to require notice and an opportunity to be heard before a landfill permit will issue.").
¶23 The trial court properly dismissed the Administrative Appeal for lack of jurisdiction because an individual proceeding did not occur before the OJA. Therefore, the Board is not entitled to any relief on that claim.
The Challenged Action Was Not Subject to the APA's Rule-Making Requirements
¶24 The determinative issue concerning the Declaratory Judgment Action is whether the challenged action by the OJA was subject to the rule-making requirements of the APA. If the process was not subject to the rule-making requirements of the APA, not only does venue not lie in Texas County, the § 306 claim must fail. Significantly, the APA defines a rule, in part, as "any agency statement or group of related statements of general applicability and future effect that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of the agency." 75 O.S. §250.3. Because the allocation of detention beds throughout the State of Oklahoma is an operational decision by the OJA, within the general ambit of statutory authority granted to it by the legislature,[8] we hold that the OJA decision to amend the State Plan and, thereby eliminate funding for the Texas County Juvenile Detention Facility, was not subject to the rule-making requirements of the APA
¶25 On the other hand, assuming that it could be determined that the OJA was obligated to proceed here only by the adoption of an APA rule, an exception to the definition of a "rule" applies, which exempts actions of an agency that represent internal management decisions that do not affect private rights. 75 O.S. § 250.3(17). Section 250.3(17) states, in part, that:
17. 'Rule' means any agency statement or group of related statements of general applicability and future effect that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of the agency. The term 'rule' includes the amendment or revocation of an effective rule but does not include:
* * *
c. statements and memoranda concerning only the internal management of an agency and not affecting private rights or procedures available to the public, . . . .
(Emphasis added).
¶26 In City of Sand Springs v. Dep't of Pub. Welfare, 1980 OK 36, 608 P.2d 1139, a declaratory judgment challenge was lodged to attempt to stop the construction of a maximum security structure to house juveniles at the then Rader Diagnostic Center in Sand Springs.[9] Id. at 1143. In challenging the proposed action, the plaintiffs there argued, in part, "that the establishment of a maximum security structure to house incorrigible juveniles is a rule-making function . . . which can [only] be accomplished validly under the . . . [APA]." Id. at 1144. In rejecting the APA challenge to the agency's proposed action, the Court held, in part, that the proposed action did not fall within the definition of a "rule" because it represented "the internal management of an agency and not affecting private rights or procedures available to the public":
Whether or not the exception . . . [now codified at 250.3(17)] excepts the decision to place an individual within the Department in the institution so built because it affects the private rights of the juvenile assigned to the secure facility, is not presented as we have no indication in the record that any of the numerous plaintiffs has the standing to present such objection. We therefore must conclude that this action is not within the ambit of the provisions of 75 O.S.1971 § 301.
[T]he questioned action of deciding to build a facility for juveniles which the Department is required to provide care and treatment for, is excepted in the third exception quoted above [now codified at 250.3(17)]. The addition to the Department's physical facilities concerns the internal management of the agency and . . . does not affect private rights under the record on appeal.
Id. at 1152-1153 (emphasis added). In Lockett v. Evans, 2014 OK 34, ¶ 19, 330 P.3d 488, the Court held that "Legislature did not intend the internal operating procedures of the Department of Corrections concerning inmates, including its execution protocol, to be subject to the rulemaking requirements of the Administrative Procedures Act." Id. at 492.
¶27 We, therefore, hold that the OJA action to amend the State Plan for Detention Services and eliminate funding for the Texas County Juvenile Detention Facility was not subject to the rule-making requirements of the APA. Consequently, the Board is not entitled to any relief on the § 306 claim in the Declaratory Judgment Action.
¶28 The Board asserted additional claims against the OJA in the Declaratory Judgment Action (other than the § 306 rule-making challenge), including an alleged violation of the Open Meeting Act and an alleged breach of contract and/or statutory mandates. We hold that venue for these claims was not properly laid in Texas County. The Declaratory Judgment Action, found at 12 O.S. §§ 1651, et seq., does not contain any special venue provisions, but instead states that "(t)he venue of said action shall be established by existing statutes." 12 O.S. § 1653B. Title 12 O.S. § 133, provides as follows:
Actions for the following causes must be brought in the county where the cause, or some part thereof arose: ... Second. An action against a public officer for an act done by him in virtue, or under color, of his office, or for neglect of his official duties. 
¶29 In Grand River Dam Auth. v. State, 1982 OK 60, 645 P.2d 1011, the Court reviewed the question of whether a formal written opinion issued by the Attorney General was subject to the APA. Id. at 1012-1013. The Court held that the appropriate venue for actions against the Attorney General is the county of his/her official residence:
The law governing venue of actions against public officers is well settled in this state. . . . [V]enue may not be founded upon the place where the decisional act is to be performed or accomplished or where damages may result from the performance or accomplishment of the decisional act. 
Any decision by a public officer emanates from the county of his official residence and therefore any cause of action connected with that decision arises in that county. This is so even though actions taken pursuant to that decision occurred in another county
.
Id., at 1013-1014 (emphasis added).
¶30 Accordingly, because the official residence of the OJA is in Oklahoma County, Texas County was not a proper venue for the claims in the Declaratory Judgment Action that do not fall within the scope of the Board's § 306 rule-making challenge. Therefore, the trial court properly dismissed those claims without prejudice.
CONCLUSION
¶31 For the reasons stated, the trial court's ruling on the jurisdiction issues in the Administrative Action and on the venue issue in the Declaratory Action are affirmed. We specifically hold that, with respect to the merits of the Board's claim in both the Administrative Action and the Declaratory Action, the trial court properly held that the Board's challenge to the OJA vote to amend the State Plan for Detention Services did not stem from an "individual proceeding" and did not constitute rule-making. Consequently, the Board is not entitled to any relief on those specific claims. We leave the remaining issues raised in the Declaratory Judgment Action as unresolved (i.e., the alleged violation of the Open Meeting Act and the alleged breach of contract and/or statutory mandates), pending further legal action, if any, by the Board in the proper venue.
GOREE, P.J., and MITCHELL, J. concur.
FOOTNOTES
[1] The Board also alleged in the Petition for Appeal to the District Court that OJA violated its statutory mandate and the Open Meeting Act. Since resolution of this appeal is dependent upon jurisdictional and due process grounds, this Court does not address the alleged violations of the Open Meeting Act, the breach of contract issue, or any statutory mandates.
[2] The trial court consolidated both cases: i.e., the Administrative Action and the Declaratory Judgment Action.
[3] Counsel for the Board stated: "Counsel was ordered to appear before the Court on Monday to argue the motion for stay. I in fact called the Attorney General's Office and talked to Mr. McClure, asked him what he understood was going to happen. He said we were going to argue the motion to stay. At that time I was not prepared and was not prepared at the time of the hearing to offer additional argument or evidence or testimony with regard to a reconsideration of the motion to dismiss based on the jurisdiction and venue issue."
[4] Pursuant to Oklahoma Supreme Court Rule 1.36(a)(1) and In re Amendments to Oklahoma Supreme Court Rules, 2013 OK 67, this appeal was assigned to the accelerated docket without appellate briefing.
[5] In accelerated appeals, like this one, this Court considers Exhibit "C"--i.e., Appellant's statement of "Issues to be Raised on Appeal"--to be of crucial importance because it alone "defines the issues raised on appeal." 5 Clyde A. Muchmore & Harvey D. Ellis, Oklahoma Appellate Practice § 19.2 (2020 ed.); cf. Dani v. Miller, 2016 OK 35, ¶ 8 n.1, 374 P.3d 779, 785.
[6] Pursuant to Rule 4(h), Rules of the District Courts, District Courts in Oklahoma are authorized to rule on motions without hearing: i.e., "[m]otions may be decided by the court without a hearing . . .".
[7] Venue for administrative appeals from individual proceedings is "the district court of the county in which the party seeking review resides . . . ." 75 O.S. § 318B(2).
[8] Title 10A O.S. § 2-3-103D, provides, in part, as follows: "The Board of Juvenile Affairs . . . shall develop, adopt, and implement a plan for secure juvenile detention services and alternatives to secure detention, to be known as the State Plan for the Establishment of Juvenile Detention Services, which shall provide for the establishment of juvenile detention facilities and services with due regard for appropriate geographical distribution and existing juvenile detention programs operated by statutorily constituted juvenile bureaus. Said plan may be amended or modified by the Board as necessary and appropriate. . . .
[9] The plaintiffs in Sands Springs alleged, in part, that the new facility posed a "nuisance" to the community because DHS intended to detain "prepsychopathic and presociopathic" juveniles at the site. Sand Springs, 608 P.2d at 1143.




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA